**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **THOMAS HICKS LANDSCAPING, INC.,** | ) **Chapter 11** |
| **Debtor.** | ) **Case No. 11-31455** |
| | ) |
| | ) |

**DECLARATION OF THOMAS J. HICKS IN SUPPORT
OF THOMAS HICKS LANDSCAPING, INC.'S CHAPTER 11 PETITION, FIRST DAY
MOTIONS, AND APPLICATION TO EMPLOY**

COMES NOW Thomas J. Hicks and, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1.      My name is Thomas J. Hicks.  I am President of Thomas Hicks Landscaping, Inc. ("Hicks Landscaping" or "Debtor").  I am over the age of twenty one (21) and competent to testify regarding the matters contained herein.

2.      On  August 30, 2011 (the "Petition Date"), Debtor commenced a case under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in this Court.  Debtor will continue to operate its businesses and manage its properties pursuant to Bankruptcy Code sections 1107(a) and 1108.

3.      In my capacity as President, I have reviewed Debtor's books and records regarding its financial condition.  The facts set forth herein are derived from my review of those records.

4.      I submit this declaration to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these chapter 11 cases,

and in support of the voluntary chapter 11 petitions and various motions and applications filed with the Court contemporaneously herewith in support of the issuance and entry of first day orders. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the operations and financial affairs of the Debtor. If I were called upon to testify I would testify competently to the facts set forth in this declaration. I am authorized to submit this declaration.

## BACKGROUND AND EVENTS LEADING
## TO THE COMMENCEMENT OF THE CHAPTER 11 CASES

5.      The following background facts and reasons for filing bankruptcy are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the operations and financial affairs of the Debtors.

## FACTUAL BACKGROUND

6.      Debtor operates a landscaping business located in Santa Rosa Beach, Florida and has been incorporated since 2004. Debtor's business, a full service landscaping operation which employs 15 individuals, provides landscaping services to both residential and commercial customers. In addition to its landscaping services, Debtor also provides sprinkler, irrigation, sod, and site clearing and development services to its customers. Debtor's revenues in 2010 were approximately $1,000,000.00.

7.      As owner of Debtor, I obtained multiple loans from Farm Credit of Northwest Florida ("Farm Credit"). The first loan obtained by me from Farm Credit originated in August of 2000 in the principal amount of $437,600.00. I obtained a second loan from Farm Credit in June of 2007 in the amount of $2,850,000.00. As of May 2011, the balance of the August 2000 loan

was approximately $270,000.00, and the principal balance of the June 2007 loan was approximately $2,790,000.00. As of the Petition Date, the outstanding indebtedness owed to Farm Credit is approximately $3,100,000.00. The Farm Credit Loans are secured by mortgages on certain parcels of real property owned by me individually, as well as certain personal property owned by me individually. Debtor guaranteed my indebtedness to Farm Credit. In addition to the indebtedness owed to Farm Credit by virtue of its guaranty, Debtor's creditors include a variety of trade vendors and similar entities.

8.    A decline in business resulting from the general economic downturn of the past few years, the oil spill in the Gulf and other factors combined with an inability to continue servicing the high debt load from the Farm Credit loans resulted in Debtor filing for relief under chapter 11 of the Bankruptcy Code.

## FIRST DAY MOTIONS

9.    Concurrently with the filing of its chapter 11 petitions, Debtor is filing certain motions and proposed orders (the "First Day Motions"). Debtor requests that each of the First Day Motions described below be entered, as each constitutes a critical element in achieving a successful rehabilitation and reorganization of Debtor for the benefit of all parties in interest.

I.    *Debtor's Motion For An Order Pursuant To Federal Rule Of Bankruptcy Procedure 1015(b) For Joint Administration of Case*

10.    On August 30, 2011, Debtor, as debtor and debtor in possession, commenced a case under chapter 11 of the Bankruptcy Code in this Court.

11.    Additionally, on August 30, 2011, I, individually, commenced a case under chapter 11 of the Bankruptcy Code in this Court.

12.    I am the president and sole owner of Debtor, and as such, Debtor and I are "affiliates" as that term as defined in Bankruptcy Code section 101(2).

13.    Debtor and I seek the joint administration of our chapter 11 cases, for procedural purposes only, pursuant to Bankruptcy Rule 1015(b).

14.    These chapter 11 cases should be administered jointly to eliminate or reduce the need for duplicative notices, motions, applications, and orders and thereby save considerable time and expense for our bankruptcy estates.

15.    Debtor and I request that one file and docket be maintained for the jointly-administered cases and that such file and docket be the file and docket established for the case of Debtor.

16.    The rights of the respective creditors of Debtor and myself will not be adversely affected by the proposed joint administration of these cases.  Each creditor may file one claim in the jointly-administered case, designating which debtor it has a claim against.  The rights of all creditors will be enhanced by the reduced costs that will result from the joint administration of these cases.

17.    I envision that numerous notices, applications, motions, hearings and orders in these cases will affect most, if not all, both bankruptcy cases.  Joint administration will permit counsel for parties in interest to include our respective estates in a single caption on the numerous documents that will be served and filed in these cases, thus enabling parties in interest of all estates to be apprised of the various matters before this Court.

18.    All professionals who file fee applications should be permitted to file fee applications in just one case for all work done for in the bankruptcy cases.

19.    Debtor and I request that joint administration of these cases include the following:

(a)    the use of a single docket for administrative matters, including the list of claims filed and the filing, logging and docketing of pleadings in order;

(b)    the combining of notices to creditors and other parties of interest;

(c)     the scheduling of hearings;

(d)     the single monthly operating report with the United States Trustee for the United States Bankruptcy Court for the Northern District of Florida (the "U.S. Trustee");

(e)     the joint handling of other administrative matters; and

(f)     the filing of a single proof of claim with a statement included therein against which of the affiliated entities the claim is filed.

II.     ***Debtor's Motion Pursuant To Sections 105(a) And 363(b) Of The Bankruptcy Code For Authorization To Pay Pre Petition Wages, Compensation and Payroll Taxes***

20.     Debtor's payroll for the current pay period would typically be due on Friday, September 2, 2011. Debtor pays payroll every Friday for wages earned from the prior Tuesday to the following Monday. On Friday, August 26, 2011, Debtor paid wages through Monday, August 29, 2011. However, it is possible that at least some employees have not deposited their payroll checks as of the Petition Date.

21.     Debtor currently has 15 full-time employees paid on a weekly basis. The wages earned the seven days prior to the Petition Date were $9,206.50.

22.     All of the obligations for which Debtor seeks authorization to honor were earned by individuals employed by Debtor and are for services rendered within one week before the commencement of Debtor's case. The obligations are for wages and payroll taxes based on such wages.

23.     Debtor believes that the uninterrupted payment of all pre-petition wages and payroll taxes based on such wages (the "Pre-Petition Obligations") is critical to its reorganization efforts because to interrupt payment to employees would severely undermine the support and morale crucial to Debtor's reorganization effort. Payment of all Pre-Petition Obligations in accordance with Debtor's pre-petition business practices will enable Debtor to continue to operate its business in an economic and efficient manner without disruption. Employees are

central to Debtor's operations and are vital to its reorganization. A significant deterioration in their morale at this critical time undoubtedly would have a devastating impact on Debtor, the value of its assets and business, and its ability to reorganize. The total amount to be paid if the authorization sought herein is granted is relatively modest compared to the size of Debtor's estate and the importance of employees to the reorganization of Debtor.

24.     All employee-requested payroll deductions are made from amounts earned by and otherwise payable to Debtor's employees.

25.     Debtor has, or will have, on deposit sufficient available funds in its bank accounts to satisfy all Pre-Petition Obligations so that Debtor's bank will not be prejudiced by any order authorizing them to honor Debtor's checks or fund transfer requests with respect to such amounts.

26.     If the checks issued and fund transfers requested in payment of the Pre-Petition Obligations are dishonored, or if such accrued obligations are not timely paid post-petition, Debtor's employees will suffer additional and extreme personal hardship and may be unable to pay their daily living expenses.

**III.    _Debtor's Motion Pursuant Sections 366 And 105(a) Of The Bankruptcy Code For Order Deeming Utility Companies Adequately Assured Of Future Performance And Establishing Procedure For Determining Requests For Additional Adequate Assurances_**

27.     In connection with the operation of its business and management of its properties, Debtor obtains water, electricity, telephone, waste management and other similar services (collectively, the "Utility Services") from approximately seven different utility companies (the "Utility Companies").

28.     The Utility Companies providing services to Hicks Landscaping are as follows:

    a.          Water/Sewer -          Regional Utilities and Culligan

b.      Electricity -          Choctawhatchee Electric Company

c.      Internet/Cable-        Century Link

d.      Telephone -          Sprint

e.      Waste Removal -     Emerald Waste Services and Waste Management

29.     Should one or more of the Utility Companies refuse or discontinue service even for a brief period, the operations of Debtor would be severely disrupted. Such an interruption would damage customer relationships, revenue, and profits and would ultimately adversely affect Debtor's efforts to reorganize.

30.     Moreover, such an interruption would result in a diminution in value of Debtor's assets and cause irreparable harm to Debtor's estate. If a provider of telephone services were to terminate or disrupt services to Debtor, existing or new customers would be unable to contact Debtor regarding their landscaping needs. In addition, if water services to Debtor were terminated or disrupted, Debtor would be unable to properly care for the trees, shrubs, plants and sod used in its landscaping business. Similarly, waste, debris and tree removal are necessary in order for Debtor to continue site clearing and development. As a result of the foregoing, customer confidence in the quality of Debtor's services would likely be lost which, in turn, would affect Debtor's ability to generate revenue.

31.     Prior to the Petition Date, Debtor received utility services from the Utility Companies. Debtor estimates its cost for utility services during next thirty (30) days will be $3,785.00.

**IV.**      ***Debtor's Motion For An Order Pursuant To Sections 105 And 363 Of The Bankruptcy Code Authorizing Continued Use Of Existing Bank Accounts***

32.     In the ordinary course of its business, Debtor maintains an operating account at Whitney Bank in which business funds are weekly deposited and disbursed for payroll and other

business expenses.  Additionally, electronic fund transfers are directed out of this operating account to pay payroll and other expenses.  Further, charge card receipts are directed from charge card entities (collectively, the "Payors") into this bank account after the Payors have taken their contractual percentage of the charge card sale.

33.    Debtor seeks a waiver of any requirements which mandate, among other things, that the Whitney Bank accounts be closed and that new post-petition bank accounts be opened. If any such requirements were enforced in the instant chapter 11 case, the requirements would cause disruption of Debtor's business and impair its ability to reorganize.

34.    Debtor believes that its transition into chapter 11 will be smoother and more orderly, with a minimum of disruption to operations, if the Whitney Bank accounts are maintained with the same account numbers following the commencement of this case.

35.    By preserving business continuity and avoiding the disruption and delay that would necessarily result from closing bank accounts and opening new accounts, all parties in interest, including employees, vendors, and customers will be best served.  The disruption that would otherwise result, absent the relief requested herein, would ill-serve Debtor's rehabilitative efforts.

36.    Debtor requests that its bank accounts at Whitney Bank be deemed debtor in possession accounts and that Debtor be authorized to maintain and continue to use these accounts in the same manner as such accounts were utilized prior to the Petition Date.

37.    Debtor agrees to write "Debtor in Possession" on its bank account signature cards and to provide the United States Trustee with bank statements for the previous six (6) months..

V.    ***Debtor's Motion Pursuant To Sections 105(a) And 363(b) And (c) For Authorization To Continue Debtor's Insurance Policies And All Agreements Relating Thereto, And To Pay All Obligations In Respect Thereof***

38.    In connection with the day-to-day operations of its businesses, Debtor is either required by law or compelled by sound business judgment to maintain various forms of insurance, including, among others, workers compensation coverage and property and casualty loss coverage; general, excess and umbrella coverage.

39.    Debtor maintains five insurance policies (collectively, the "Insurance Policies") through several different insurance carriers (collectively, the "Insurance Carriers").  Specifically, FUBA provides workers compensation insurance, Victoria provides automobile property and casualty coverage, Essex's provides additional property and casualty coverage, and USIC provides an umbrella policy.

40.    The Insurance Policies are essential to the ongoing operation of Debtor's business.  In the event such policies were terminated for non-payment, Debtor would be exposed to substantial liability for any damages resulting to persons and property of Debtor and others.

41.    The annual premiums for Debtor's Insurance Policies aggregate approximately $54,525.00.  As of the Petition Date, Debtor believes it is current in respect of its pre-petition premiums and deductible reimbursements under these policies.  To the extent a premium or deductible reimbursement relating to a period prior to the Petition Date is outstanding with respect to any insurance policy, Debtor seeks authority to make such payment in the same manner that such payments were made prior to the Petition Date.

42.    Debtor proposes to continue to make all post-petition payments with respect to the Insurance Policies, including, without limitation, deductibles, premiums, and payments to the Insurance Carriers.  Debtor proposes to pay all obligations arising under or related to these

polices subsequent to the Petition Date in the ordinary course of business, not on an accelerated basis, and in accordance with the terms of these policies.

## APPLICATION TO EMPLOY

43.    Debtor desires to retain and employ Burr & Forman as its attorneys in this chapter 11 case, effective as of the Petition Date.  Debtor has selected Burr & Forman because: (a) Debtor has consulted with Burr & Forman prior to the Petition Date with respect to, *inter alia*, advice regarding a host of issues related to Debtor's restructuring efforts and the preparation for the commencement and prosecution of this chapter 11 case; (b) Burr & Forman and the attorneys that have been assigned to this chapter 11 case have considerable experience in the fields of bankruptcy, insolvency, reorganizations, liquidations, debtors' and creditors' rights, debt restructuring, and corporate reorganizations; (c) Burr & Forman does not hold or represent any interest adverse to Debtor or to its bankruptcy estate, as more particularly discussed below and in the *Solomon Declaration*; and (d) Burr & Forman is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, as more particularly discussed below.

44.    Debtor envisions that Burr & Forman will have responsibility for counseling and representing Debtor in connection with general bankruptcy administration in this chapter 11 case as well as general corporate, finance, litigation, tax, customer issues, vendor issues, insurance, and assisting Debtor on matters relating to local bankruptcy custom and practice.  In the event that there is a conflict of interest with a particular matter, Debtor will employ additional counsel to assist in such matter.

45.    Debtor is not aware of any objection by any creditor to Burr & Forman's employment or any actual conflict of interest if the employment herein requested is approved.

46.    To the best of Debtor's knowledge, information and belief, other than as set forth in the *Solomon Declaration,* Burr & Forman has no connection with Debtor, its secured creditors, its unsecured creditors, or any other parties in interest or its respective attorneys, except that Debtor engaged Burr & Forman with respect to Debtor's restructuring efforts and the preparation for and the commencement and prosecution of this chapter 11 case.

47.    To the best of Debtor's knowledge, information and belief, Burr & Forman (a) does not hold or represent any interest adverse to Debtor or to its bankruptcy estate and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

48.    Debtor believes that Burr & Forman is well qualified to represent it in this chapter 11 case and that Burr & Forman's retention is necessary and in the best interest of Debtor and its bankruptcy estate.

Pursuant to 28 U.S.C. § 1746. I declare under penalty of perjury that the following is true and correct.

Executed and dated: August 30, 2011

Thomas Hicks Landscaping, Inc.

By: *Thomas Hicks*

Thomas J. Hicks, President

11